UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHELLE GRYS,

       Plaintiff,

    v.

NANCY A. BERRYHILL,[1] Commissioner of
 Social Security,

       Defendant.
_____

**DECISION
and
ORDER**

**17-CV-00718F**
(**consent**)

APPEARANCES:   LAW OFFICES OF KENNETH R. HILLER, PLLC
          KENNETH R. HILLER, and
          IDA M. COMERFORD, of Counsel
          Attorneys for Plaintiff
          6000 North Bailey Avenue
          Suite 1A
          Amherst, New York 14226

          JAMES P. KENNEDY, JR.
          UNITED STATES ATTORNEY
          Attorney for Defendant
          Federal Centre
          138 Delaware Avenue
          Buffalo, New York 14202
            and
          OONA MARIE PETERSON
          Special Assistant United States Attorney, of Counsel
          Social Security Administration
          Office of General Counsel
          26 Federal Plaza – Room 3904
          New York, New York 10278
            and
          MICHAEL ARLEN THOMAS
          Special Assistant United States Attorney, of Counsel
          Social Security Administration
          Office of General Counsel
          1961 Stout Street, Suite 4169
          Denver, Colorado 80294

---

[1] Nancy A. Berryhill became Acting Commissioner of the Social Security Administration on January 23, 2017. Pursuant to Fed.R.Civ.P. 25(d), Berryhill is substituted for Carolyn W. Colvin as Defendant in this case. No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

On June 19, 2018, the parties to this action, consented pursuant to 28 U.S.C. § 636(c) to proceed before the undersigned. (Dkt. 13). The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on April 12, 2018 (Dkt. 10), and by Defendant on June 27, 2018 (Dkt. 15).

## BACKGROUND

Plaintiff Michelle Grys ("Plaintiff"), brings this action under the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application filed with the Social Security Administration ("SSA"), on March 26, 2014, for Disability Insurance Benefits under Title II of the Act ("SSDI"), and for Supplemental Security Income under Title XVI of the Act ("SSI") (together, "disability benefits"). Plaintiff alleges she became disabled on September 1, 2013, based on panic attacks, anxiety, depression, mood swings, difficulty with reading comprehension, eczema, rashes, astigmatism, and hypothyroidism. AR[2] at 193. Plaintiff's application was denied on June 16, 2014, AR at 99-114, and at Plaintiff's timely request, on June 6, 2016, a hearing was held in Buffalo, New York, by video before administrative law judge Gregory M. Bock ("the ALJ"), located in Kansas City, Missouri. AR at 49-74. Appearing and testifying at the hearing were Plaintiff, with legal counsel Kelly Laga, Esq., and vocational expert Vanessa May ("the VE").

---

[2] References to "AR" are to the page of the Administrative Record electronically filed by Defendant on February 12, 2018 (Dkt. 8).

On June 14, 2016, the ALJ issued a decision denying Plaintiff's claim, AR at 24-39 ("the ALJ's decision"), which Plaintiff appealed to the Appeals Council. AR at 174. On June 2, 2017, the Appeals Council issued a decision denying Plaintiff's request for review, rendering the ALJ's decision the Commissioner's final decision. AR at 1-6. On July 28, 2017, Plaintiff commenced the instant action seeking judicial review of the ALJ's decision.

On April 18, 2018, Plaintiff filed a motion for judgment on the pleadings (Dkt. 10) ("Plaintiff's Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 10-1) ("Plaintiff's Memorandum"). On June 27, 2018, Defendant filed a motion for judgment on the pleadings (Dkt. 15) ("Defendant's Motion"), attaching The Commissioner's Brief in Support of the Commissioner's Motion for Judgment on the Pleadings Pursuant to the Local Standing Order on Social Security Cases (Dkt. 15-1) ("Defendant's Memorandum"). In further support of Plaintiff's Motion, Plaintiff filed on August 22, 2018, Plaintiff's Response Memorandum of Law (Dkt. 18) ("Plaintiff's Reply"). Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED.

## **FACTS**[3]

Plaintiff Michelle Grys ("Plaintiff" or "Grys"), born October 18, 1967, was 46 years old as of September 1, 2013, her alleged disability onset date ("DOD"). Because of a learning disability, Plaintiff attended school in special education classes until dropping out partway through her junior year of high school, but has since received a high school

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those facts necessary for determining the pending motions for judgment on the pleadings.

3

general equivalency degree ("GED"). AR at 52-53, 193. Plaintiff has past work experience as a food service production helper and dishwasher. AR at 68-69, 181-84, 194, 207-10. Plaintiff lived alone with her dog, AR at 200, and had a driver's license. AR at 55. It is undisputed that Plaintiff suffers from the severe impairments of anxiety/panic disorder and obesity. In connection with her disability benefits application, Plaintiff underwent psychiatric examinations by psychologists Christine Ransom, Ph.D. ("Dr. Ransom"), on October 25, 2013, AR at 403-06, and Kavita Subrahmanian, Ph.D. ("Dr. Subrahmanian"), on May 7, 2014. AR at 459-62.

## DISCUSSION

**1. Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A). A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Substantial evidence is more

than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id.* "Congress has instructed . . . that the factual findings of the Secretary,[4] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d60, 62 (2d Cir. 1982).

**2. Disability Determination**

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). If the claimant meets the criteria at any of the five steps, the inquiry ceases and the claimant is not eligible for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or

---

[4] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

"the Listings"), and meets the duration requirement,[5] there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience.  42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d).  As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity" ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW").  20 C.F.R. §§ 404.1520(e) and 416.920(e).  If the applicant remains capable of performing PRW, disability benefits will be denied, *id.*, but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c).  The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

In the instant case, the ALJ found Plaintiff meets the Act's insured status requirement for SSDI through March 31, 2017, AR at 29, Plaintiff has not engaged in substantial gainful activity since September 1, 2013, her alleged disability onset date,

---

[5] The duration requirement mandates the impairment must last or be expected to last for at least a continuous twelve-month period.  20 C.F.R. §§ 404.1509 and 416.909.

6

*id.*, that Plaintiff suffers from the severe impairments of anxiety/panic disorder and obesity, *id.* at 29, but that Plaintiff's other medically determinable impairments, including headaches, eczema, stomach pain related to gastrointestinal/acid reflux, chronic obstructive pulmonary disease ("COPD"), and hypothyroidism, do not have more than a minimal impact on Plaintiff's ability to do work activities, *id.*, at 29-30, that Plaintiff does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in 20 C.F.R. Part 404, Subpt. P, App. 1, *id.* at 30-31, and that Plaintiff retains the RFC to perform medium work limited to repetitive, simple, unskilled work not involving complex tasks or instructions, no interacting with the general public, and only occasionally interacting with co-workers. *Id.* at 31-33. The ALJ thus concluded Plaintiff is capable of performing her PRW as a kitchen helper, *id.* at 33-34, such that Plaintiff is not disabled as defined under the Act. *Id.* at 34.

Plaintiff does not contest the ALJ's findings with regard to the first step of the five-step analysis, but argues that at steps two and beyond, the ALJ completely ignored Plaintiff's documented learning disability, failing to assess it as either a severe or non-severe impairment, Plaintiff's Memorandum at 12, or to consider the learning disability and other non-exertional impairments in combination, *id.* at 12-16, requiring remand for further consideration of the evidence, *id.* at 16, including four documents showing Plaintiff, while attending school, had a learning disability, was described as a "very slow learner," and received accommodations in a resource room, and that Plaintiff's IQ measured 73 in 1st grade, 78 in 4th grade, and 80 in 7th grade. *Id.* at 5 (citing AR 185-88). Defendant argues to the contrary that substantial evidence in the record establishes the ALJ properly assessed Plaintiff's learning disability as well as its impact

on Plaintiff's RFC. Defendants' Memorandum at 9-17. In reply, Plaintiff maintain that although she included her learning disability among her alleged severe impairments, the ALJ failed to consider the impairment under § 12.05C of the Listing of Impairments, or to obtain an intellectual evaluation of Plaintiff. Plaintiff's Reply at 1-4. There is no merit to this argument.

Preliminarily, Plaintiff does not list a learning disability among her alleged impairments, but does refer to a "comprehension problems when reading." AR at 193. At the administrative hearing, Plaintiff's attorney stated only that "a learning disability is noted," before asserting Plaintiff is "greatly affected by her anxiety attacks." AR at 52. The context in which reference to Plaintiff's learning disability is made does not support a finding that Plaintiff asserted her learning disability is a severe impairment. *See Suttles v. Berryhill*, 2018 WL 2926273, at * 10 (N.D.N.Y. June 11, 2018) (finding claimant's failure to raise learning disability and intellectual impairment before the ALJ or the Appeals Council, alleging them for first time in federal action, despite having legal representation since initially filing for disability benefits, did not require remand where record established impact on ability to work posed by such impairment was included in ALJ's decision).

Nor does Plaintiff's learning disability meet or medically equal the relevant criteria set forth the Listing of Impairments, *i.e.*, 20 C.F.R. Part 404, Subpt. P, Appx 1 ("the Listings") which, as Plaintiff asserts, Plaintiff's Memorandum at 11; Plaintiff's Reply at 3-4, should be evaluated under Listing 12.05C pertaining to intellectual disorders which are

> characterized by significantly subaverage general intellectual functioning, significant deficits in current adaptive functioning, and manifestation of the

8

disorder before age 22. Signs may include, but are not limited to, poor conceptual, social, or practical skills evident in your adaptive functioning.

20 C.F.R. Part 404, Subpt. P, App. 1 § 12.00B4a.

To establish she meets the Listing for intellectual disorder, Plaintiff must demonstrate "[s]ignificantly subaverage general intellectual functioning evidenced by" (1) an individually administered standardized test of general intelligence yielding either a full scale IQ score of 70 or below, or a full scale IQ score of 71-75 accompanied by a verbal or performance IQ score of 70 or below, with (2) significant deficits in adaptive functioning currently manifested by extreme limitation of at least one, or by marked limitation of at least two of four areas of mental functioning, and (3) evidence establishing the intellectual disorder manifested prior to attaining age 22. Here, although the record establishes the third criteria, *i.e.*, that Plaintiff's borderline intellectual functioning disorder manifested itself prior to age 22, Plaintiff cannot establish the first two criteria for the Listing.

In particular, of the three IQ scores for Plaintiff in the record, none are below 70, nor is there any verbal or performance IQ score below 70. *See* AR at 186-88 (showing Plaintiff's IQ scores in 1st, 4th, and 7th grades, respectively, as 73, 78, and 80). Nor is there any evidence that Plaintiff has an extreme limitation in one, or a marked limitation in two of the four areas of mental functioning which include (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. Part 404, Subpt. P, § 12.05B2. Rather, the medical evidence establishes at as of October 25, 2013, Plaintiff had, at most, moderate limitations in attention and concentration, and memory, AR at 403-06 (Adult Psychiatric Evaluation by Dr. Ransom), and as of May 7,

9

2014, was only mildly impaired as to attention and concentration. AR at 459-462 (May 7, 2014 Psychiatric Evaluation by Dr. Subrahmanian). Dr. Ransom assessed Plaintiff with intellectual functioning and general fund of information within normal limits, AR at 405, while Dr. Subrahamian assessed Plaintiff with low to average intellectual functioning, with limited general fund of information. AR 461. Both Drs. Ransom and Subrahamian found Plaintiff able to tend to her activities of daily living, including dressing, bathing, grooming, cooking and preparing food, cleaning, doing laundry, and shopping. AR at 405, 461. Although Plaintiff's sister assisted Plaintiff with managing her funds, Plaintiff socialized with family and friends, and had hobbies and interests, including watching television and reading. *Id.* Accordingly, substantial evidence in the record establishes Plaintiff's intellectual disorder does not meet the first and second criteria under Listing 12.05C.

Plaintiff maintains that because the record does not contain a current IQ score the ALJ should have ordered an intelligence consultative exam. Plaintiff's Reply at 2-4. Generally, a consultative exam is used to resolve an inconsistency in the evidence, or to permit the ALJ to make a determination or decision on a claim where the evidence as a whole is insufficient. *See Tankisi v. Comm'r of Soc. Sec.*, 521 Fed.Appx. 29, 31 (2d Cir. Apr. 2, 2013) (citing 20 C.F.R. 416.919a(b)). Although failure to obtain a consultative examination where necessary for the ALJ to make an informed decision is remandable error, *Falcon v. Apfel*, 88 F.Supp.2d 87, 90-91 (W.D.N.Y. 2000), "an ALJ is not required to order a consultative examination if the facts do not warrant or suggest the need for it." *Tankisi*, 521 Fed.Appx. at 32. Courts have held an ALJ's failure to order a cognitive examination to assess a claimant's intelligence is not an abuse of discretion so long as

sufficient information in the record supports the determination that the claimant's intellectual impairment does not preclude the performance of substantial gainful employment. *See Helwig v. Comm'r of Soc. Sec.*, 2018 WL 6330242, at \*\* 3-4 (W.D.N.Y. Dec. 4, 2018) (citing cases).

In the instant case, Plaintiff was able to obtain her GED, AR at 53, as well as a driver's license, asserting she drove when she needed to, including to doctor appointments, but avoided driving because of anxiety. AR at 55, 202, 206. Plaintiff lived by herself, *id.* at 55, and was able to care for herself and her dog, as well as clean her home, do her own laundry, prepare meals, and shop for groceries. AR at 62, 200-06, 405, 461. Plaintiff's hobbies and interests include reading and watching television. AR at 62-63, 202. Relevantly, Plaintiff repeatedly attributes her alleged inability to work to anxiety and panic attacks, and never to low intellectual functioning. *See, e.g.*, AR at 54 (explaining in response to ALJ's inquiry why Plaintiff is unable to work that she gets "bad panic attacks," that she will "start to panic and get nervous because I'm not doing a good enough job or I'm not satisfying anybody or making them happy in my job so I start to panic and, you know, I hyperventilate . . . ."), 55-56 (Plaintiff testifying she wants to work, but panic attacks caused her to quit jobs before she was fired). That the ALJ's Decision is devoid of any reference to Plaintiff's IQ scores strongly suggests the ALJ was not relying on the allegedly outdated and stale scores in determining Plaintiff's RFC. *See Helwig*, 2018 WL 6330242, at \* 5 (that ALJ did not reference outdated IQ scores in assessing the claimant's intellectual functioning, but relied instead on the claimant's activities, hearing testimony, and the examination by consultative psychologist established the ALJ did not consider the outdated IQ scores as sufficient

evidence to support a determination at any step of the sequential process). Nor did Plaintiff, who has been represented by legal counsel since March 20, 2014, AR at 97, independently seek a consultative intellectual assessment or request the SSA obtain such an assessment. *See Helwig*, 2018 WL 6330242, at * 5 (fact that claimant was represented by legal counsel since 2011, yet never sought intelligence testing prior to administrative hearing in 2017, undermined claimant's argument that ALJ should have obtained a consultative assessment of claimant's borderline intellectual functioning). The undisputed facts in the instant case thus neither warrant nor suggest the need for a consultative intelligence assessment of Plaintiff. *See Helwig*, 2018 WL 6330242, at ** 5-6 (relying, in assessing limitations posed by claimant's intellectual impairment, on consultative psychologist's assessment, claimant's own description of his daily activities, and claimant's work record showing the claimant, despite his intellectual impairment, was capable of working). Accordingly, the ALJ did not err in failing to order a consultative intelligence assessment.

Furthermore, a plain reading of the ALJ's decision establishes the ALJ considered Plaintiff's borderline intellectual functioning in combination with her other impairments in determining Plaintiff has the RFC to perform the demands of medium work, limited to repetitive, simple, unskilled work not involving any complex tasks or complex instructions, and with no interaction with the general public and limited interaction with co-workers, which RFC would not preclude Plaintiff's PRW as a kitchen helper. *See Zabala v. Astrue*, 595 F.3d 402, 409-10 (2d Cir. 2010) (finding harmless error when impairment is considered at subsequent step of sequential evaluation). The ALJ's determinations that Plaintiff is mildly limited in activities of daily living, and

moderately limited in social functioning and concentration, persistence and pace, AR at 30, are supported by the psychological assessments of Dr. Ransom, AR at 404-05, and Dr. Subrahmanian, AR at 460-61, to which the ALJ gave great weight. AR at 31-32. The ALJ summarized that Plaintiff "does have some mental limitations. She cannot handle complex tasks and she cannot handle extensive social interaction." AR at 32. The ALJ also incorporated such limitations in the hypotheticals posed to the VE. AR at 69 (posing a hypothetical in which the individual "mentally, she has some restrictions in that she's limited to repetitive, simple, unskilled work that would not involve any complex tasks or complex instructions"), to which the VE responded Plaintiff could perform her PRW as a kitchen helper. AR at 70. Accordingly, the record establishes the ALJ sufficiently considered the impact posed by Plaintiff's intellectual disorder on her ability to work.

Plaintiff also argues the ALJ failed to provide the requisite good reasons for disregarding the opinion of Plaintiff's treating physician in violation of the treating physician rule. Plaintiff's Memorandum at 16-21. Under the so-called "treating physician's rule," the opinion of a treating physician is entitled to significant weight where it is supported by medical evidence in the record, and to controlling weight where it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record." 20 C.F.R. § 404.1527(d)(2). Treating physician opinions, however, are not determinative and are granted controlling weight only when they are not inconsistent with other controlling evidence. 20 C.F.R. § 4040.1527(d); *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (citing *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)).

In the instant case, the ALJ afforded "little weight" to "a report apparently by a treating doctor" in which Plaintiff's medical problems were reported as rendering Plaintiff "incapable of even 'low stress' jobs," because the evaluation is not supported by any evidence in the record. AR at 32 (citing AR at 453-458). Substantial evidence in the record establishes this determination by the ALJ did not violate the treating physician's rule.

It is significant that it is not clear that the subject report, presented in the format of a "Physical Residual Functional Capacity Questionnaire," was completed by any of Plaintiff's treating physicians as the physician's signature is illegible, AR at 458, portions of the report where this fact could be clarified are not completed, including one for indicating the "frequency and length of contact," AR at 454, and other spaces in which the physician was to "print/type" his or her name and address, AR at 458, and a cover page accompanying the report indicating it was e-mailed from Plaintiff's attorney's office to the SSA identifies the "treatment source" as "clients [*sic*] doctor." AR at 453. Under this scenario, the ALJ's reference to the report as "a report apparently by a treating doctor," AR at 32, is fully warranted. Even assuming, *arguendo*, the report was generated by a treating physician, the findings therein are inconsistent with the medical evidence as a whole, including the reports of Drs. Ransom and Subrahmanian, who found Plaintiff only mildly to moderately limited in her abilities to handle stress, despite her panic attacks and anxiety disorder, which were not found to significantly interfere with Plaintiff's ability to function on a daily basis. AR at 403-06, 459-62. Accordingly, the ALJ did not violate the treating physician's rule by failing to give controlling weight to the report by "clients [*sic*] doctor."

The ALJ's finding that Plaintiff is not disabled thus is supported by substantial evidence in the record.

## CONCLUSION

Based on the foregoing, Plaintiff's Motion (Dkt. 10) is DENIED; Defendant's Motion (Dkt. 15) is GRANTED. The Clerk of Court is directed to close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:	January 16, 2019
	Buffalo, New York